**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| INDEPENDENT LABORATORY EMPLOYEES' UNION, INC. | : : : | |
| Petitioner, | : : | |
| v. | : : | Case No.: 3:18-cv-10835-BRM-DEA |
| EXXONMOBIL RESEARCH AND ENGINEERING CO., | : : : | **OPINION** |
| Respondent. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Petitioner Independent Laboratory Employees' Union's ("ILEU") Motion to Confirm Arbitration Award (ECF No. 7); (2) ILEU's Motion to Dismiss Respondent's Answer and Counterclaim (ECF No. 26); (3) Respondent ExxonMobil Research and Engineering Co.'s ("EMRE") Motion to Dismiss Petitioner's First Amended Petition to Confirm Arbitration Award (ECF No. 30); and (4) EMRE's Cross-Motion to Vacate Arbitration Award (ECF No. 47). All motions are opposed (ECF Nos. 28, 36, 52). Having reviewed the parties' submissions filed in connection with the motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, ILEU's Motion to Confirm Arbitration Award is **GRANTED**, ILEU's Motion to Dismiss Respondent's Answer and Counterclaim is **GRANTED IN PART AND DENIED IN PART**, EMRE's Motion to Dismiss Petitioner's First Amended Petition to Confirm Arbitration Award is **DENIED**, and EMRE's Cross-Motion to Vacate Arbitration Award is **DENIED**. Finally, **JUDGMENT ON**

**THE AWARD SHALL ISSUE IN FAVOR OF ILEU**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an arbitration award entered in favor of ILEU against EMRE, ordering EMRE to "cease and desist from permanently contracting out bargaining units at its Clinton, New Jersey facility." *Ind. Lab. Empls.' Union, Inc. v. ExxonMobil Rsrch. & Eng. Co.*, Grievance No. 15-190 (ECF No. 1-3), at 21 (May 25, 2018) (Klein, Arb.) (the "*Klein Award*").

A.    **The Parties**

EMRE exists to support ExxonMobil Corporation's Upstream, Downstream, and Chemical business operations by seeking solutions to energy challenges anticipated to arise in the next two to three decades. *Klein Award* at 6. The facility in Clinton, New Jersey (the "Clinton Facility") is one of 432 laboratories and 92 plants EMRE maintains for that purpose. *Id.* EMRE divides its staff into two groups: "core" positions that "directly impact research and business functions" and "non-core" positions that serve "support functions such as security and materials delivery." *Id.*

EMRE's workforce is partially unionized. *Id.* ILEU is a union that represents approximately 165 EMRE employees, comprising approximately 25% of all EMRE staff. *Id.* Among ILEU's members, approximately 80% are research technicians qualifying as "core" positions. *Id.*

B.    **The Collective Bargaining Agreement**

A collective bargaining agreement between EMRE and ILEU governs the "rates of pay, hours of employment, and other conditions of employment" of ILEU members employed at the Clinton Facility. (Agreement Between ExxonMobil Research and Engineering Co. and Independent Laboratory Employees' Union, Inc., art. I, § 2 (June 1, 2013) (ECF No. 3) (the

"CBA").)  The CBA provides that EMRE "recognizes [ILEU] as the exclusive representative of all EMRE employees whose job classifications are listed in Exhibit II and who are based at the [Clinton Facility]."  (*Id.*, art. I, § 2.)

The CBA permits EMRE to "let independent contracts," provided that EMRE notify ILEU of contracts that exceed a certain dollar threshold.  (*Id.*, art. XVIII.)  The CBA also restricts layoffs and demotions during the contracting period.  (*Id.*)

The CBA contains a "management rights" clause, reserving to EMRE "all rights of management for facilities covered by [the CBA] or pertaining to the operation of the business, except to the extent that such rights are limited by [the CBA]."  (*Id.*, art. XXVIII.)

Finally, the CBA allows either party to submit disputes to arbitration, and further provides that the arbitrator's decision is "final and binding" unless contrary to law or unless the arbitrator deviates from the terms of the agreement.  (*Id.*, art. VIII, §§ 1, 7.)

### C.    History of Dispute Resolution

The bargaining history between ILEU and EMRE goes back over half a century.[1]  *See Klein Award* at 17.  During that time, the parties have litigated grievances and arbitrated multiple disputes concerning EMRE's use of non-union independent contractors.

In 1977, ILEU grieved EMRE's use of independent contractors.  *See id.* at 6.  An EMRE vice president denied ILEU's grievance, but wrote that when EMRE "need[s] to utilize [non-union] personnel, [ILEU] can be assured that it will only be done when operations require, and in conjunction with, a combined program of employment and uprates [sic] of our own [union] personnel."  *Id.* (quoting Letter from R.L. Weeks, Vice President, EMRE, to ILEU (Aug. 5, 1977)).  The EMRE vice president wrote further, "I can state positively that there was not in this case, nor will there be in the future, any intent to erode the bargaining unit nor will there be in

---

[1]    The most recent version of the CBA became effective on June 1, 2013.  (CBA, art. II, § 1.)

the future, any intent to erode the bargaining unit nor to limit the number of bargainable [sic] employees." *Id.* (quoting Letter from R.L. Weeks, Vice President, EMRE, to ILEU (Aug. 5, 1977)).

A 1981 arbitration concerned EMRE's plan to contract for additional entry-level mail room staff while EMRE's parent corporation Exxon underwent a change in the mail processing procedures for its affiliated companies, a process expecting to last several months. *See EMRE v. ILEU* ("*Stark Award*"), at 2, 6 (Aug. 12, 1981) (Stark, Arb.).[2] The arbitrator found that EMRE failed to provide ILEU notice of the contracting as required by CBA article XVIII. *Id.* at 11-13. In the award, the arbitrator wrote that while article XVIII "is not onerous" and "is clearly not a very restrictive provision," but also indicated that the parties should not read article XVIII "in a highly legalistic manner." *Id.*

ILEU and EMRE also arbitrated a 1983 dispute resulting from a backlog in EMRE's Distribution Control and Manuals Division that arose while EMRE attempted to set up a new computer system. *See ILEU v. EMRE* ("*Florey Award*"), Grievance No. WP-75, at 2 (Apr. 11 & 19, 1983) (Florey, Arb.).[3] EMRE hired independent contractors to reduce the backlog. *Id.* Holding that EMRE's use of independent contractors in this instance was permissible,[4] the arbitrator distinguished between (1) EMRE's permissible use of independent contractors to satisfy its business' operational needs, and (2) a hypothetical, impermissible use of independent contractors to replace union employees and thereby undermine the bargaining unit. *Id.* at 13.

[2] The record does not contain a copy of the *Stark Award*, but the *Klein Award* discusses it. *See Klein Award* at 18. The parties provided the Court with a copy.

[3] The record contains an incomplete copy of the *Florey Award*. (ECF No. 52-1.) The parties provided the Court with a complete copy.

[4] The arbitrator also found that EMRE's failure to timely notify ILEU of its use of contractors violated CBA article XVIII. *See Florey Award* at 16. Timely notification is not at issue in this case.

The arbitrator explained that "the use of [non-union] personnel was in response to a true operational problem and not designed to undermine the bargaining unit in violation of the recognition clause of the [CBA]." *Id.* Expanding on that theme, the arbitrator opined that "even with the broad language of Article XVIII," the CBA would not support "the position that [EMRE] need not hire any more persons into the bargaining unit so that [ILEU] would atrophy by attrition." *Id.* at 13-14.

### D.   The Present Dispute Over EMRE's Attrition Program

This dispute arose when EMRE began phasing out union positions in favor of independent contractor positions as union employees retired. *Klein Award* at 8. The company expected to "mov[e] towards a fully contracting model" for all non-core positions that would permanently replace union members with non-union independent contractors, and sought to achieve its goal through the "attrition" of union members. *Id.* at 8-9.

On November 11, 2015, ILEU grieved EMRE's attrition program. *Id.* at 9. The parties subsequently submitted their dispute to arbitration. The arbitrator held two hearings at which the parties presented oral argument, witness testimony, and documentary evidence. *Id.* at 1. After receiving post-hearing briefs, the arbitrator issued a 21-page written award, sustaining ILEU's grievance and ordering EMRE to "cease and desist from permanently contracting out bargaining unit positions at [the Clinton Facility]." *Id.* at 21.

### E.   Procedural History in this Court

This action ranks among most procedurally complex cases this Court has faced. ILEU first filed what it styled as a "Verified Complaint," and later filed what it styled "First Amended Petition to Confirm Arbitration Award and Entry of Judgment," both substantially similar documents seeking confirmation of the *Klein Award* and asking this Court to enter judgment in

favor of ILEU and against EMRE on that award.  (ILEU's First Am. Pet. (ECF No. 6) ¶ 1; ILEU's Verified Compl. (ECF No. 1-1) ¶ 1.)  ILEU also filed a motion seeking the same relief. (ILEU's Notice of Mot. to Confirm Arb. Award (ECF No. 7) at 1-2.)

In response, EMRE submitted a filing entitled "Answer" to ILEU's First Amended Petition, responding to each paragraph in ILEU's First Amended Petition, raising five affirmative defenses, and stating a counterclaim.[5]  (EMRE's Answer (ECF No. 21) at 1-12.)  ILEU moved to dismiss this Answer and its accompanying counterclaim.  (ILEU's Mot. to Dismiss (ECF No. 26) at 1-2.)   EMRE, in turn, moved to dismiss ILEU's First Amended Petition.  (EMRE's Mot. to Dismiss (ECF No. 30) at 1-2.)

ILEU then filed what it styled as a "Second Amended Petition," substantially similar to its initial Verified Complaint and First Amended Petition, and seeking the same relief.  (ILEU's Second Am. Pet. (ECF No. 43) ¶ 1.)  EMRE subsequently filed what it styled as an "Answer" to ILEU's Second Amended Petition, responding to each of the numbered paragraphs in ILEU's Second Amended Petition, raising four of the five affirmative defenses[6] from EMRE's first Answer, and bringing the same counterclaim from EMRE's first Answer.  (EMRE's Second Answer (ECF No. 44) at 1-13.)

ILEU asked the Court for leave to amend its pending Motion to Dismiss EMRE's First Answer so as to seek dismissal of EMRE's Second Answer.  (Letter from Annemarie T. Greenan, Counsel to ILEU, to the Court, at 1 (Nov. 21, 2018) (ECF No. 45).)

---

[5]   EMRE's five affirmative defenses were that (1) the petition fails to state a claim on which relief can be granted; (2) the *Klein Award* does not draw its essence from the CBA; (3) the *Klein Award* ignores the plain language of the CBA; (4) ILEU procured the *Klein Award* via "undue means," and (5) the *Klein Award* "evidences manifest disregard of the law."  (Answer (ECF No. 21) at 5.)  EMRE's counterclaim sought to vacate the *Klein Award*.  (*Id.* at 5-12.)

[6]   EMRE's second Answer did not assert the affirmative defense that ILEU procured the *Klein Award* via undue means.  (EMRE's Second Answer (ECF No. 44) at 5.)

Finally, EMRE filed its own cross-motion to vacate the arbitration award.  (EMRE's Notice of Cross-Mot. to Vacate Arb. Award (ECF No. 47), at 1-2.)  In the course of briefing on this cross-motion to vacate—but not in an independent motion—EMRE asked this Court to deem admitted the allegations in EMRE's counterclaim in light of what EMRE characterized as ILEU's failure to respond.  (EMRE's Reply Br. (ECF No. 53) at 3-5.)

## II.    JURISDICTION

EMRE argues that this Court lacks jurisdiction over ILEU's action to confirm the arbitration award because (1) the FAA is not an independent grant of subject matter jurisdiction, and (2) ILEU's First Amended Petition does not affirmatively allege any other basis for subject matter jurisdiction.  While the FAA does not vest this Court with subject matter jurisdiction, the Court finds that the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, does confer jurisdiction on the Court.  The Court also finds that ILEU's failure to affirmatively allege a jurisdictional basis does not deprive this Court of jurisdiction.

The FAA is not an independent source of subject matter jurisdiction over an action to confirm an arbitration award.  *See, e.g.*, *Valden v. Discover Bank*, 556 U.S. 49, 59 (2009).  In order to confirm, modify, or vacate an arbitration award under the FAA, a federal court requires an independent basis for subject matter jurisdiction.  *See, e.g.*, *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008).

One such basis is the LMRA, which grants this Court jurisdiction to confirm or vacate arbitration awards between a labor union and an employer.  *See* 29 U.S.C. § 185; *Tube City IMS, LLC v. USW Int'l Union, Local 5852-19*, 406 F. App'x 639, 639 (3d Cir. 2011).  Because ILEU is a labor union seeking to confirm an arbitration award against employer EMRE, the LMRA vests this Court with subject matter jurisdiction.

The LMRA vests this Court with subject matter jurisdiction even though ILEU's did not explicitly allege the LMRA as a basis for federal subject matter jurisdiction in ILEU's First Amended Petition. First, this Court may "overlook[] [the parties'] reliance on jurisdictional statutes which are inapposite and instead independently ascertain[] whether there [is] any basis on which subject matter jurisdiction could be asserted." *Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549, 552 (3d Cir. 1983) (collecting cases); *see also V.I. Hous. Auth. v. Coastal Gen. Constr. Servs.*, 27 F.3d 911, 914 n.2 (3d Cir. 1994); *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1018 (3d Cir. 1991). Second, this Court has the authority to permit amendment of defective jurisdictional allegations. 28 U.S.C. § 1653; *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999). Because the facts alleged demonstrate that this Court has jurisdiction under LMRA § 301, and because ILEU has filed a Second Amended Petition to specifically allege the LMRA as a basis for subject matter jurisdiction, this Court possesses subject matter jurisdiction.

III.    FEDERAL ARBITRATION ACT

The parties disagree about the nature and scope of this action. ILEU characterizes this case as a summary proceeding under the FAA, under which the only appropriate course is for this Court to confirm, modify, or vacate the *Klein Award*, and to enter judgment accordingly. EMRE disagrees, arguing that because the FAA does not apply to arbitration between labor unions and employers, this proceeding is no different than any other civil action. Because the FAA applies to labor arbitration awards of the type at issue in this case, the FAA and its summary procedures apply to this case.

The FAA applies to any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract

or transaction."  9 U.S.C. § 2.  However, the FAA defines "commerce" as to exclude "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  *Id.* § 1.  Although the statute contains catch-all language exempting "any other class of workers" from the FAA, that language "exempts from the FAA only contracts of employment of transportation workers."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.").  The Third Circuit extends the exemption both to "workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it."  *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3d Cir. 2004) (quoting *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., Local 437*, 207 F.2d 450, 452 (3d Cir. 1953)).

EMRE does not contend that its employees covered by the CBA are transportation employees or are otherwise so closely intertwined with transportation so as to come within the exemption in FAA § 1.  Rather, EMRE argues that FAA § 1 exempts all labor contracts from the FAA's reach.  In light of the governing case law, this argument fails.  Accordingly, the FAA and its summary procedures apply to this proceeding.

## IV.  ANSWER AND COUNTERCLAIM

In addition to disputing the governing law, the parties also dispute whether EMRE's Answer and its accompanying counterclaim are procedurally appropriate in this proceeding. ILEU argues pleadings and counterclaims have no place in a proceeding to confirm an arbitration award.  EMRE contends ILEU used the incorrect procedure to attack EMRE's counterclaim, that courts regularly entertain both answers and counterclaims in the context of reviewing arbitration

awards, and that ILEU's failure to appropriately respond to EMRE's filing requires the Court to deem admitted the allegations in EMRE's filing. First, the Court concludes ILEU's motion to dismiss is procedurally appropriate. Second, the Court concludes that while EMRE's responsive pleadings are not procedurally appropriate in this proceeding, the Court should treat EMRE's counterclaims as motions under FAA § 6 to vacate the *Klein Award*. Finally, the Court will not deem admitted the allegations in EMRE's counterclaim because EMRE's filing did not require a responsive pleading.

### A. Motions to Strike vs. Motions to Dismiss

As a threshold matter, EMRE contends[7] that ILEU's attack on EMRE's Answer and counterclaim must fail because ILEU should have filed a motion to strike under Federal Rule of Civil Procedure 12(f), but instead inappropriately filed a motion to dismiss under Rule 12(b)(6). This Court disagrees for two reasons.

First, Rule 12(f) operates only against pleadings, not motions. *See* Fed. R. Civ. P. 12(f); *Watkins v. New Castle Cnty.*, 374 F. Supp. 2d 379, 394 (D. Del. 2005). Because this is a proceeding under the FAA, the Court must treat EMRE's Answer as a motion rather than a pleading. *See* 9 U.S.C. § 6; *CD&L Realty, LLC v. Owens-Ill., Inc.*, No. 11-CV-7248, 2012 WL 4463878, at *2 n.2 (D.N.J. Sept. 25, 2012). Accordingly, a motion to strike under Rule 12(f) would have been inappropriate because Rule 12(f) would not apply against EMRE's filing.

Second, even if the Court were to treat EMRE's filing as a pleading rather than a motion, EMRE's argument would still fail because Rule 12(b)(6), not Rule 12(f), is the appropriate mechanism to attack an opposing counterclaim. *See, e.g.*, *Pennington v. Wells Fargo Bank, N.A.*,

---

[7]    EMRE also suggests that ILEU cannot apply its motion to dismiss EMRE's first Answer pleading to EMRE's subsequently filed second Answer pleading. The Court disagrees. *See Cordis Corp. v. Boston Sci. Corp.*, 431 F. Supp. 2d 465, 480 (D. Del. 2006) (permitting a party to cross-apply arguments from a prior filing to the present issue).

947 F. Supp. 2d 529, 534 (E.D. Pa. 2013).

**B.     Motions vs. Pleadings**

Next, the Court must determine whether EMRE's Answer and counterclaim are appropriate in this proceeding.  Although the filings are not appropriate as pleadings, the Court will recharacterize the filings as procedurally appropriate motions.

The FAA "limit[s] judicial review" of arbitration awards in order to "'maintain[] arbitration's essential virtue of resolving disputes straightaway.'  If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'"  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). For that reason, courts routinely characterize the FAA as providing "summary proceedings" for review of arbitration awards, making FAA proceedings unique among other types of litigation. *See, e.g.*, *Careminders Home Care, Inc. v. Concura, Inc.*, 660 F. App'x 795, 796 (11th Cir. 2016); *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 99 (1st Cir. 2015); *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015); *Okla. City Assocs. v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 793 (10th Cir. 1991); *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d, 541, 543 (5th Cir. 1987); *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986).

Section 6 of the FAA—the statute's primary tool for limiting and expediting judicial review of arbitration awards—requires that "[a]ny application to the court" to confirm, modify, or vacate an arbitration award "shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6; *see also Hall St.*, 552 U.S. at 582 (observing that a filing seeking review of an arbitration award "will get streamlined treatment as a motion, obviating the separate contract action that would

usually be necessary to enforce or tinker with an arbitral award in court"). "Procedurally, this Court treats" such a filing "as a motion to [confirm, modify, or] vacate the arbitrator's award," as appropriate. *CD&L Realty, LLC v. Owens-Ill., Inc.*, No. 11-CV-7248, 2012 WL 4463878, at *2 n.2 (D.N.J. Sept. 25, 2012).

If a filing seeks review of an arbitration award, courts will recharacterize that filing as a motion no matter how the filing is structured or styled. *See Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 496 n.3 (1st Cir. 2005); *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1257-59 (7th Cir. 1992); *O.R. Secs., Inc. v. Prof'l Planning Assocs.*, 857 F.2d 742, 745-46 (11th Cir. 1988); *cf. Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 214-17 (1st Cir. 2015) (holding that a complaint, not a motion, was the appropriate filing to seek to modify or vacate an arbitration award when another statute governed the proceeding). This is true even if a party captions its filing like a pleading or structures the filing's contents like a pleading. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006).

This unique feature of litigation under the FAA diverts so significantly from the normal practice of litigation that it often conflicts with the Federal Rules of Civil Procedure. *See, e.g.*, *Guidotti v. Legal Helpers Debt Resol'n, LLC*, Civ. No. 11-1219, 2017 WL 89556, at *2 (D.N.J. Jan. 9, 2017) (noting "a potential conflict between the FAA and the Federal Rules of Civil Procedure"). Recognizing that fact, the Rules explicitly yield to the FAA when procedures under the FAA and the Rules conflict. *See* Fed. R. Civ. P. 81(a)(6)(B) (noting that the Rules have only limited application in FAA proceedings).

In fact, some of the Federal Rules of Civil Procedure do not apply at all. For instance,

the pleading rules of Rule 8 do not apply.  *See O.R. Secs., Inc.*, 857 F.2d 742, 748 (11th Cir.

1990).  Because there are no "pleadings" in an FAA proceeding, the right to amend pleadings

under Rule 15 is not applicable.  *See Chelmowski v. AT&T Mobility, LLC*, 615 F. App'x 380, 381

(7th Cir. 2015).  The FAA's summary proceedings are inconsistent with the pretrial orders and

case management conferences contemplated by Rule 16.  *See Health Servs. Mgmt. Corp. v.

Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992).  Most discovery under Rule 26 is unavailable.  *See

In re Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 702 n.15 (2d Cir.

1978).  "Rule 55 [concerning defaults and default judgments] does not operate well in the

context of a motion to confirm or vacate an arbitration award."  *D.H. Blair & Co. v. Gottdiener*,

462 F.3d 95, 107 (2d Cir. 2006).  Most noteworthy here are Rule 12 (governing responsive

pleadings) and Rule 13 (governing counterclaims).

### 1.    Responsive Pleadings Under Rule 12

A party to a proceeding under the FAA may not file a responsive pleading under Rule 12

because FAA proceedings involve no initial pleading to which a defending party may respond.

*See IFC Interconsult*, 438 F.3d at 308-09; *see also ISC Holding AG v. Nobel Biocare Finance

AG*, 688 F.3d 98, 112 (2d Cir. 2012).  ILEU's petition seeking confirmation of the *Klein Award*

does not warrant a responsive pleading because ILEU's petition must be treated as a motion.  *See

9 U.S.C. § 6; *IFC Interconsult*, 438 F.3d at 308-09.  Rather than file its Answer, EMRE should

have filed an opposition to ILEU's motion, or its own cross-motion to vacate the *Klein Award*.

To conform the filing to the procedural requirements of the FAA, the Court will treat the Answer

pleading as a motion[8] to vacate the *Klein Award*.  *See CD&L Realty*, 2012 WL 4463878, at *2

---

[8]    Because the Answer and its included counterclaim make essentially the same arguments as
EMRE's separately filed cross-motion to vacate the award, the Court consolidates all these
filings into one motion for purposes of this opinion.  *See United States v. Balice*, Civ. No. 14-
3937, 2016 WL 1178860, at *1 (D.N.J. Jan. 15, 2016); *Thomas Global Grp. v. Watkins*, Civ.
No. 13-04864, 2014 WL 1371719, at *1 n.1 (D.N.J. Apr. 8, 2014).

n.2.

## 2. Counterclaims Under Rule 13

Likewise, parties usually may not file counterclaims under Rule 13 because the nature of FAA proceedings does not contemplate litigation of any matters beyond those matters the FAA explicitly permits. *See Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931 (11th Cir. 1990); *cf. Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987) (holding that the party seeking confirmation of an arbitration award may not join a related claim for damages). *But see BP Am. Prod. Co. v. Chesapeake Expl., LLC*, 747 F.3d 1253, 1259-60 (10th Cir. 2014) (allowing a defendant's counterclaim where the plaintiff's initial petition sought additional relief apart from the confirmation of an arbitration award). However, the FAA does not bar "counterclaims that fall within the specific defenses permitted under §§ 10 and 11 of the [FAA]." *Booth*, 902 F.2d at 931; *see also* 9 U.S.C. §§ 10 (enumerating the permissible reasons for vacating an arbitration award); *id.* § 11 (enumerating the permissible reasons for modifying an arbitration award).

The FAA permits EMRE's counterclaim because that counterclaim states a defense under FAA § 10—namely that "the arbitrator[] exceeded [her] powers." 9 U.S.C. § 10(a)(4); *see Booth*, 902 F.2d at 931. However, like "[a]ny application to the court" to vacate an arbitration award, the counterclaim must be treated as a motion. 9 U.S.C. § 6. Rather than dismiss EMRE's counterclaim entirely, the Court will treat EMRE's counterclaim as a motion[9] to vacate the arbitration award. *See CD&L Realty*, 2012 WL 4463878, at *2 n.2.

## C. Admission of Unrefuted Allegations

EMRE also argues that this Court must deem that ILEU has admitted all of the

---

[9]    Because the Answer and its included counterclaim make essentially the same arguments as EMRE's separately filed cross-motion to vacate the award, the Court consolidates all these filings into one motion for purposes of this opinion. *See Balice*, 2016 WL 1178860, at *1; *Thomas Global Grp.*, 2014 WL 1371719, at *1.

allegations in EMRE's counterclaim because ILEU failed to specifically deny any of those allegations. The Court rejects this argument—which EMRE raises for the first time in a reply brief—because "arguments raised for first time in [a] reply brief will not be considered." *Washington v. Doran*, 717 F. App'x 151, 155 (3d Cir. 2017). However, EMRE's argument would fail even if raised in an independent motion because (1) the relevant Federal Rule of Civil Procedure—Rule 8(b)(6)—does not apply in FAA proceedings, and (2) Rule 8(b)(6), by its own terms, does not require that the Court deem EMRE's allegations as admitted.

Rule 8(b)(6) governs the effect of a party's failure to refute allegations in a pleading. However, FAA proceedings involve only motions—not pleadings. 9 U.S.C. § 6. If a party files a pleading, the Court will treat that pleading as a motion. *See IFC Interconsult*, 438 F.3d at 308-09. For that reason, many of the Federal Rules of Civil Procedure do not apply in FAA proceedings. Fed. R. Civ. P. 81(a)(6)(B). Because FAA proceedings do not involve pleadings, many of the rules governing pleadings do not apply. *See, e.g.*, *Chelmowski*, 615 F. App'x at 381 (amendment of pleadings under Rule 15); *O.R. Secs.*, 857 F.2d at 748 (notice pleading under Rule 8). Although not involving pleadings, the clearly analogous Rule 55—involving defaults and defaults judgments—"does not operate well in the context of a motion to confirm or vacate an arbitration award." *D.H. Blair*, 462 F.3d at 107. Given that parties do not file any pleadings in FAA proceedings and the overall summary nature of those proceedings, Rule 8(b)(6) must be among the rules made inapplicable in FAA proceedings under Rule 81(a)(6)(B). Accordingly, Rule 8(b)(6) does require this Court to deem admitted EMRE's allegations in its counterclaim.

EMRE cites a host of authority, arguing that the court in each applied Rule 8(b)(6) to deem a party's allegations admitted when the opponent failed to respond to the allegations. *See United States ex rel. Auto. Sprinkler Corp. of Am. v. Merritt-Chapman & Scott Corp.*, 305 F.2d

121, 123(3d Cir. 1962); *Fed. Ins. Co. v. von Windherburg-Cordeiro*, Civ. No. 12-2491, 2013 WL 6199253, at *3 (D.N.J. Nov. 27, 2013); *Routes 202 & 309 & Novelty Gifts, Inc. v. Kings Men*, Civ. No. 11-5822, 2014 WL 899136, at *7 (E.D. Pa. Mar. 7, 2014). Each decision is distinguishable. One decision applied Rule 8(b)(6) against a party only in the absence of that party's objection. *Fed. Ins. Co.*, 2013 WL 6199253, at *2. The two remaining decisions applied Rule 8(b)(6) outside the context present here—an FAA proceeding to confirm or vacate an arbitration award—such that Rule 81(a)(6) would therefore have no effect on the application of Rule 8(b)(6). *See Auto. Sprinkler*, 305 F.2d at 122; *Routes 202 & 309 & Novelty Gifts*, 2014 WL 899136 at *5-6.

Even if Rule 8(b)(6) did apply in FAA proceedings, the rule by its terms would still not require the Court to deem that ILEU has admitted the allegations in EMRE's counterclaim. "An allegation [in a pleading]—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). However, "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." *Id.* Because the Court must treat EMRE's counterclaim as a motion rather than a pleading, *see* part IV.C., *supra*, nothing required ILEU to file a responsive pleading. *See* Fed. R. Civ. P. 7(a) (listing the permissible pleadings). Accordingly, Rule 8(b)(6) by its terms does not require that the Court deem that ILEU has admitted the allegations in EMRE's counterclaim.

## V.    CONFIRMING VS. VACATING THE AWARD

The Court will now address the merits of the dispute: vacating or confirming the *Klein Award*. EMRE puts forward two bases for vacating the award. First, EMRE cites FAA § 10(a)(4), arguing that the *Klein Award* did not draw its essence from the CBA, and as a result the arbitrator exceeded her contractually delegated powers. Second, EMRE argues that the arbitrator

acted in manifest disregard of the law. The Court finds the arbitrator's decision withstands the minimal level of scrutiny appropriate for review of an arbitration award. Therefore, the *Klein Award* is confirmed. *See* 9 U.S.C. § 9 (requiring courts to confirm arbitration awards unless vacated).

## A.     Federal Arbitration Act § 10(a)(4)

EMRE first argues this Court should vacate the *Klein Award* under FAA § 10(a)(4) because the arbitrator exceeded her powers—that the award did not draw its essence from the CBA and the arbitrator instead dispensed her own brand of industrial justice. The Court disagrees because the *Klein Award* arguably construed and applied the CBA; the arbitrator's decision is not totally unsupported by principles of contract law and the law of the shop, nor is it so completely irrational that it lacks support altogether.

"Courts play a very limited role in reviewing the decision of an arbitrator appointed pursuant to a collective bargaining agreement." *Citgo Asphalt Refining Co. v. PACE Int'l Union, Local No. 2-991*, 385 F.3d 809, 815 (3d Cir. 2004). A court reviews an arbitration award "under an 'extremely deferential standard,' the application of which 'is generally to affirm easily the arbitration award.'" *Hamilton Park Health Care Ctr. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).

One such enumerated ground is that "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator violates this provision "when he decides an issue not submitted to [arbitration], grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter v. Oxford Health Plans, LLC*, 675 F.3d 215, 219-20 (3d Cir. 2012). "Indeed,

a reviewing court may disturb an arbitrator's award 'only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop.'" *Akers Nat'l Roll Co. v. USW Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). In other words, a court "must uphold the arbitration panel's award so long as it 'draws its essence' from or 'arguably construes or applies' the parties' contract." *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 584 (3d Cir. 2005) (quoting *News Am. Pub. v. Newark Typographical Union*, 918 F.2d 21, 24 (3d Cir. 1990)).

"It is thus not the role of a court to correct factual or legal errors made by an arbitrator." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005). "When [the arbitrator] makes a good faith attempt to [interpret and enforce a contract], even serious errors of law or fact will not subject his award to vacatur." *Sutter*, 675 F.3d at 220. "The Supreme Court has phrased the same idea in this fashion: 'if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Akers*, 712 F.3d at 160 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

### 1.    The *Klein Award*

The *Klein Award* surpasses this extremely deferential standard. The arbitrator began by ruling that the CBA should not be read to authorize subcontracting of unlimited duration because the CBA contained language implying that subcontracting would have limited duration. *See Klein Award* at 19-20. Appearing in the same section authorizing EMRE to hire independent contractors, the CBA imposes certain restrictions on EMRE "during any period of time" in which

EMRE utilizes subcontractors.  (CBA, art. XVIII.)  "By definition, 'a period of time' has a start date and an end date."  *Klein Award* at 19.  The arbitrator determined that this CBA language suggests that the CBA should not be read to authorize permanent contracting.  *Id.* at 20.

The arbitrator also ruled that EMRE's plan to permanently replace union employees with non-union contractors violated the CBA clause[10] requiring that ILEU will be "the exclusive representative of all EMRE employees whose job classifications are listed in Exhibit II and are based at the Clinton, New Jersey facility."  (CBA, art. II, § 2.)  If EMRE replaces union employees holding covered job classifications with non-union contractors, the arbitrator ruled, then ILEU will no longer represent the individuals holding the covered job classifications, as required by the CBA.  *Klein Award* at 20.

Finally, the arbitrator held that the CBA's management rights clause did not compel a different result because the CBA explicitly limited the clause's application "to the extent that [EMRE's management] rights are limited by the provisions of this [CBA]."  (CBA, art. XXVIII.)  Having found that the "period of time" language in article XVIII and the "exclusive representative" limited EMRE's right to permanently replace union employees with non-union contractors, the arbitrator determined that the management rights clause, by its own terms, did not independently empower EMRE to carry out its attrition plan.  *See Klein Award* at 20.

---

[10]  EMRE argues that the arbitrator "impermissibly considered" the so-called "recognition clause."  The Court disagrees: this clause is just as much a part of the CBA as any other language; the arbitrator has no grounds to disregard this provision.  EMRE also argues that the Court misinterpreted the recognition clause, but even assuming the arbitrator erred, such an error is not grounds to vacate the *Klein Award*.  *See Sutter*, 675 F.3d at 220; *Brentwood Med. Assocs.*, 396 F.3d at 240.  EMRE cites two decisions—both non-binding decisions from outside this circuit—to support its argument.  *See Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155-56 (6th Cir. 1982); *Beaird Indus. v. Local 2297, UAW, 404 F.3d 942, 945-47* (5th Cir. 2005).  Neither compels a different result because neither decision involved a lengthy history between the parties of the type that the arbitrator considered here.  *See* next paragraph, *infra.* (discussing the 1977 comments of an EMRE vice president and the 1983 *Florey Award*).

Whether or not this Court agrees with the *Klein Award*'s analysis, the arbitrator's good faith interpretation of the CBA is reasonable, especially in light of the history between ILEU and EMRE on which the arbitrator relied. The *Klein Award* cites the 1977 comments of an EMRE vice president, stating that EMRE will hire independent contractors only when operational needs require and will never seek to reduce the number of ILEU-covered employees. *Id.* at 6. Those comments are consistent with the 1983 arbitration award which explains that the CBA's language does not justify a program of using the attrition of union employees to permanently replace covered positions with non-union contractors. *See Florey Award* at 13-14. EMRE's present plan directly conflicts with both its vice president's 1977 comments and the *Florey Award*'s 1983 CBA interpretation. Given this history, the Court cannot say that the *Klein Award* "is so completely irrational that it lacks support altogether," or is "totally unsupported by principles of contract construction and the law of the shop." *Sutter*, 675 F.3d at 219-20; *Akers*, 712 F.3d at 160 (quoting *Ludwig Honold*, 405 F.2d at 1128).

### 2.    Material Extraneous to the Collective Bargaining Agreement

EMRE argues that the arbitrator should not have considered any extraneous "parol evidence" to interpret the CBA's allegedly unambiguous provision. *See Local 461 & Dist. III, Int'l Union of Elec. Workers v. Singer Co.* ("*IUEW*"), 540 F. Supp. 442, 446-47 (D.N.J. 1982) (noting that a court may not consider parol evidence to interpret unambiguous language in a fully integrated written collective bargaining agreement). The Court rejects this contention and concludes the arbitrator permissibly considered both the 1977 comments of EMRE's vice president and the 1983 *Florey Award*.

Reference to material outside a contract is appropriate when "interpret[ing] a collective bargaining agreement" because "collective bargaining agreements may include implied as well

as express terms," and "the parties' 'practice, usage and custom is of significance in interpreting

their agreement.'" *Se. Pa. Transp. Auth. v. Bhd. of R.R. Signalmen*, 882 F.2d 778, 784-85 (3d

Cir. 1989) (quoting *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 311 (1989)); *see

also Int'l Union, UMW of Am. v. Racho Trucking Co.*, 897 F.2d 1248, 1254 (3d Cir. 1990).

Courts have long permitted labor arbitrators to support an award by resorting to "the law of the

shop." *Akers*, 712 F.3d at 160 (quoting *Ludwig Honold*, 405 F.2d at 1128). Additionally—and

unique to this case—an arbitrator deciding a matter between EMRE and ILEU must consider

prior arbitration awards between those two parties because their CBA itself provides that prior

arbitration awards have precedential effect "for the life of this [CBA], or any renewals thereof."

(CBA, art. VII, § 7(B).) Both general labor law and this specific CBA authorized the arbitrator

to consider evidence like the 1977 comments of EMRE's vice president and the 1983 *Florey

Award*. *See UMW*, 897 F.2d at 1254; *Bhd. of R.R. Signalmen*, 882 F.2d at 784-85; (CBA, art.

VII, § 7(B)).

     *IUEW* is distinguishable because the parties there explicitly "agree[d] that the collective

bargaining agreement [at issue was] a complete and fully-integrated agreement." *IUEW*, 540 F.

Supp. at 447. Here, the agreement between EMRE and ILEU goes beyond the text of the CBA,[11]

because the CBA itself explicitly provides that prior arbitration agreements—like the *Florey

Award*—continue to bind the parties. (CBA, art. VII, § 7(B).) Even if *IUEW* were applicable

here—and it is not—this Court cannot follow an older district court decision to the extent it

conflicts with more recent precedent of the Third Circuit. *See Int'l Union, UMW of Am.*, 897

F.2d at 1254; *Se. Pa. Transp. Auth.*, 882 F.2d at 784-85. According, the arbitrator permissibly

---

[11] EMRE does not argue that the CBA's "zipper clause" requires a different result. (CBA, art. XXIII, § 2.) The Court therefore has no occasion to determine whether the clause independently prohibits the consideration of extraneous evidence. *Cf. Se. Pa. Transp. Auth.*, 882 F.2d at 785 (holding that a zipper clause did not bar the consideration of extraneous or "parol" evidence).

relied on the 1983 *Florey Award* and the 1977 comments of EMRE's vice president.

### 3.    The Contracting Clause

Finally, EMRE contends that the Court must vacate the *Klein Award* because the CBA's subcontracting clause unambiguously entitles EMRE to carry out its plan to replace union employees with non-union contractors via attrition, and that by holding otherwise, the arbitrator impermissibly modified the CBA. In light of the extraordinarily minimal bar necessary to uphold an arbitration award, the Court disagrees.

Courts reviewing an arbitration award "must enforce [the] arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and [they] may only vacate the award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d. Cir. 1996) (quoting *News Am. Pubs., Inc. v. Newark Typo. Union, Local 103*, 918 F.2d 21, 24 (3rd Cir. 1990)).    Courts discussing the "manifest disregard" standard often explain that an arbitration award must "draw its essence from the collective bargaining agreement," rather than dispense the arbitrator's "own brand of industrial justice." *See, e.g.*, *Akers*, 712 F.3d at 160; *Citgo Asphalt Refining*, 385 F.3d at 816; *Pa. Power Co. v. Local 272, IBEW*, 276 F.3d 174, 178 (3d Cir. 2001). "An award may fairly be said to 'draw[] its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.'" *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d. Cir. 2004) (quoting *UTU, Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379-80 (3d Cir. 1995)).    Most importantly, this means "that an 'arbitrator may not ignore the plain language of the contract.'" *Pa. Power Co.*, 276 F.3d at 179 (quoting *United Paperworks Int'l Union*, 484 U.S. 29, 38 (1987)); *see also*

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 251 (3d Cir. 2011) (noting, in dicta, that an "arbitrator may not ignore the plain language of the contract").

EMRE argues the CBA's contracting clause *unambiguously* empowers EMRE to permanently replace union workers with non-union independent contractors—that is, EMRE contends its interpretation is the only plausible interpretation, and any other interpretation impermissibly disregards the contractual language.

To support its argument, EMRE points to the contracting article itself, which (1) states that EMRE "may let independent contracts," (2) requires EMRE to notify ILEU of independent contracts exceeding a certain dollar threshold, and (3) restricts layoffs and demotions during the contracting period. (CBA, art. XVIII.) The contracting clause is silent concerning the permissible duration and permissible purposes of independent contracting, neither expressly prohibiting nor expressly permitting EMRE to use non-union subcontractors as permanent replacements for union employees. (CBA, art. XVIII.) Because the CBA is silent on these questions, there is no express language with which an arbitration award could conflict; the *Klein Award* cannot be said to have "ignore[d] the plain language of the contract." *Pa. Power Co.*, 276 F.3d at 179; *Pernod Ricard*, 653 F.3d at 251.

Several counter-examples are instructive. For instance, one decision involved a collective bargaining agreement that defined a specific dollar amount that a pipe manufacturer must contribute to its employees' welfare plan. *See Swepco Tube LLC v. Local 427, IUE-CWA*, No. 07-CV-767, 2008 WL 746670, at *1-3 (D.N.J. Mar. 18, 2008). By ordering the pipe manufacturer to contribute more than the defined amount, the arbitrator impermissibly ran afoul of the agreement's express terms, justifying[12] the court in vacating the award. *See id.* at *4-6.

---

[12] The district court in this case also ruled that the arbitrator "disregarded [a] basic tenant of contract law" by improperly applying the "mutual mistake" doctrine. *Swepco Tube*, 2008 WL 746670 at *5. When the district court issued its decision in March 2008, a district could

In a second decision, a collective bargaining agreement required a hospital to follow certain procedures when performing a "layoffs," defining the term as "a permanent reduction in force and/or a reduction in force of unlimited duration." *Lourdes Med. Ctr. of Burlington Cty. v. JNESO*, Civ. No. 04-4494, 2007 WL 1040961, at *11-12 (D.N.J. Apr. 5, 2007). An arbitrator impermissibly varied from the agreement's express terms by finding that a nurse working reduced hours had been subject to a "layoff," even though the nurse still worked at the hospital. *See id.* at *13.

A third decision concerned the collective bargaining agreement between a casino and its unionized doormen, which explicitly "reserve[d] the [casino's] right, which is hereby recognized by the Union, to schedule. . . [and] assign . . . [employees] according to the requirements of the business," and allowed the casino's doormen, "[a]t Management's discretion," to perform certain gratuity-earning work. *Boardwalk Regency Corp. v. UNITE HERE, Local 54*, Civ. No. 08-0016, 2009 WL 540675, at *6 (D.N.J. Mar. 3, 2009). The arbitrator disregarded the agreement's express terms by ordering the casino to reassign the doormen back to this gratuity-earning work after the casino had scheduled the doormen for other assignments. *See id.* at *7-8.

The agreements in all three decisions contained detailed language outlining the scope of the right or obligation in controversy, and the arbitrator issued an award that directly conflicted with that explicit language. Not so for the CBA between EMRE and ILEU: the CBA's single-sentence pronouncement on EMRE's right to subcontract contains no language detailing the permissible duration or purpose of EMRE's use of independent contractors. (CBA, art. XVIII.) Because the contract is silent on these issues, the *Klein Award* did not violate any explicit language concerning permissible duration or purpose; it did "not ignore the plain language of the

could vacate an arbitration award for manifest disregard of the law. *See Dluhos*, 321 F.3d at 370. After 2008, this doctrine no longer constitutes an independent basis for vacating an award. *See* part V.B., *infra*.

contract." *Pa. Power Co.*, 276 F.3d at 179; *Pernod Ricard*, 653 F.3d at 251; *cf. Rock-Tenn Co. v. PACE Int'l Union, Local No. 4-0895*, 108 F. App'x 905, 907-08 (5th Cir. 2004) (vacating an arbitration award that limited an employer's right to subcontract because the collective bargaining agreement provided that "nothing in this agreement shall in anyway [sic]" limit the right to subcontract).

This does not mean that the arbitrator's view of the CBA's subcontracting clause is necessarily correct: the arbitrator might plausibly have determined, as EMRE contends, that the CBA imposes no restrictions on the duration or purpose of contracting. But this Court's role is not to interpret the CBA; it is merely to determine whether the arbitrator's interpretation "can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Major League Umpires Ass'n*, 357 F.3d at 280 (quoting *UTU, Local 1589*, 51 F.3d at 379-80) (emphasis in *UTU*). The Court may vacate the *Klein Award* only if the award "is so completely irrational that it lacks support altogether," or is "totally unsupported by principles of contract construction and the law of the shop." *Sutter*, 675 F.3d at 219-20; *Akers*, 712 F.3d at 160 (quoting *Ludwig Honold*, 405 F.2d at 1128).

The 1977 comments of EMRE's vice president and the 1983 *Florey Award* demonstrate that EMRE's interpretation is not the only permissible read of the CBA. In 1983, an arbitrator explained that the subcontracting clause did not authorize the permanent replacement of union employees with non-union contractors, but instead merely provided EMRE with the flexibility to respond to legitimate business challenges. *Florey Award* at 13-14. The *Florey Award* is consistent with the 1977 comments of EMRE's vice president, who represented that EMRE would use contractors only when legitimate business needs necessitated the use of contractors,

and that EMRE would balance the hiring of contractors with the use of unionized employees. *Klein Award* at 6.

Relying in part on the *Florey Award* and the EMRE vice president's 1977 comments, the arbitrator concluded that the subcontracting clause did not authorize EMRE's plan to permanently replace union employees with non-union contractors. The arbitrator's interpretation is not "so completely irrational that it lacks support altogether," nor is it "totally unsupported by principles of contract construction and the law of the shop." *Sutter*, 675 F.3d at 219-20; *Akers*, 712 F.3d at 160 (quoting *Ludwig Honold*, 405 F.2d at 1128). Accordingly, the arbitrator's alleged misinterpretation of the CBA's contracting clause does not provide this Court with cause to vacate the *Klein Award*.

This Court "cannot and do[es] not pass judgment on the wisdom of the arbitrator's conclusion." *Brentwood Med. Assocs.*, 396 F.3d at 242 n.6. The Court does not hold that the CBA's silence concerning the permissible duration or purpose of contracting *compels* the arbitrator's interpretation of the CBA; the Court likewise does not hold that the *Florey Award* and the 1977 comments of EMRE's vice president *require* the arbitrator's interpretation of the contracting clause. The Court does not decide whether EMRE's interpretation of the contracting clause is correct, or preferable or superior to the arbitrator's interpretation. These matters are beyond the scope of this Court's review. The Court decides only that the arbitrator's interpretation meets the minimal bar necessary to confirm its award.

## B.  Manifest Disregard of the Law

EMRE also argues that the Court should vacate the *Klein Award* because the award constitutes a manifest disregard of the law. The Court rejects this argument because "manifest disregard of the law" is no longer an independent basis for vacating an arbitration award but is

instead merely a judicial shorthand for the enumerated justifications for vacatur in FAA § 10(a).

The FAA enumerates four reasons that a court may vacate an arbitration award. 9 U.S.C. § 10(a)(1)-(4). Prior to 2008, courts could vacate an award for an additional, unenumerated reason: "where the arbitrator's decision 'evidence[s] a manifest disregard for the law rather than an erroneous interpretation of the law.'" *Dluhos*, 321 F.3d at 370 (quoting *Int'l Bhd. of Teamsters, Local 863 v. Jersey Coast Egg Prods., Inc.*, 773 F.2d 530, 534 (3d Cir. 1985)).

In 2008—without mentioning the "manifest disregard of the law" doctrine—the Supreme Court ruled that arbitrating parties could not "supplement by contract" the FAA's four grounds for vacating an award because the the FAA's "statutory grounds are exclusive." *Hall St.*, 552 U.S. at 578. Two years later, the Supreme Court expressly refused to "decide whether 'manifest disregard' survives [its] decision in [*Hall Street*] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010).

In ten decisions over the last decade, the Third Circuit has likewise declined to decide whether *Hall Street* impacted the "manifest disregard of the law" doctrine. *See Ross Dress for Less, Inc. v. VIWP, L.P.*, 750 F. App'x 141, 145 n.1 (3d Cir. 2018); *Anoruo v. Tenet HealthSystem Hahnemann*, 697 F. App'x 110, 111 n.1 (3d Cir. 2017); *Goldman v. Citigroup Global Markets, Inc.*, 834 F.3d 242, 256 n.13 (3d Cir. 2016); *Whitehead*, 811 F.3d at 120-21; *Bellantuono v. ICAP Secs. USA, Inc.*, 557 F. App'x 168, 173-74 (3d Cir. 2014); *CD&L Realty, LLC v. Owens Ill., Inc.*, 535 F. App'x 201, 205 n.3 (3d Cir. 2013); *Rite Aid N.J., Inc. v. UFCW, Local 1360*, 449 F. App'x 126, 129 n.3 (3d Cir. 2011); *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 175-77 (3d Cir. 2010); *Bapu Corp. v. Choice Hotels Int'l., Inc.*, 371 F. App'x 306, 309 (3d Cir. 2010); *Andorra Servs., Inc. v. Venfleet, Ltd.*, 355 F. App'x 622, 627 (3d Cir. 2009).

The question divides the other circuits.  *See Beallantuono*, 557 F. App'x at 173 n.3 (noting that the doctrine survives in the Second, Fourth, and Ninth Circuits, but not in the Fifth, Eighth, and Eleventh Circuits).

In the absence of controlling authority, most decisions of the District of New Jersey similarly decline to decide *Hall Street*'s impact on the "manifest disregard" doctrine.  *See, e.g.*, *Lerner v. Citigroup*, Civ. No. 16-CV-1573, 2019 WL 1579512, at *3 n.4 (D.N.J. Apr. 12, 2019).  However, several decisions do address the issue, and the weight of the authority is that *Hall Street* extinguishes the doctrine as an independent ground for vacating an award:

> [I]n light of *Hall Street*, use of the manifest disregard standard is no longer authorized to the extent it was previously viewed as an additional basis for vacatur.  However, insofar as manifest disregard is merely "shorthand for § 10(a)(3) or § 10(a)(4)," the standard lives on.  Rather than viewing it as an extra-statutory vehicle for vacatur, this Court—in the absence of a Third Circuit directive otherwise—will continue to apply the manifest disregard standard as a means to enforce § 10, consistent with *Hall Street*.

*Vitarroz Corp. v. G. Willi Food Int'l, Ltd.*, 637 F. Supp. 2d 238, 245 (D.N.J. 2009) (citations omitted) (quoting *Hall Street*, 552 U.S. at 585).  Other decisions of the District of New Jersey similarly treat "manifest disregard" as merely shorthand for the FAA's enumerated reasons for vacatur.  *See Sabre GLBL, Inc. v. Shan*, No. 15-CV-8900, 2018 WL 1905802, at *3 (D.N.J. Apr. 23, 2018), *appeal docketed*, Nos. 18-2079 & 18-2144 (3d Cir. May 25, 2018); *Int'l Bhd. of Teamsters, Local 701 v. CBF Trucking, Inc.*, Civ. No. 09-5525, 2010 WL 2400400, at *4 (D.N.J. June 10, 2010).  *But see I.B.T., Local 560 ex rel. Holland v. Serv. Concrete Co.*, Civ. No. 11-4529, 2011 WL 4380735, at *3 n.1 (D.N.J. Sept. 19, 2011) (characterizing the state of the law by saying that "the Third Circuit has not yet altered its position that the manifest disregard of law constitutes a lawful ground to vacate an arbitration award").

In light of this district's recharacterization of the "manifest disregard" doctrine, the

arbitrator's alleged manifest disregard of the law does not constitute an independent basis to vacate the *Klein Award*. To the extent that the "manifest disregard" doctrine merely references the statutory grounds for vacatur in FAA § 10(a), the Court previously addressed, and rejected EMRE's argument that FAA § 10(a)(4) requires the Court to vacate the *Klein Award*. *See* part V.A., *supra*.

## VI. JUDGMENT ON THE AWARD

Finally, EMRE contends that even if the Court cannot vacate the *Klein Award*, the Court lacks power to enter judgment on the award because the parties did not agree to allow a court to do so. The Court disagrees because the parties agreed that arbitration awards will be "final and binding." (CBA, art. VII, § 7(B).)

The FAA commands that unless a court vacates, modifies, or corrects an arbitration award on one of several enumerated grounds, the court "must" issue "an order confirming the award." 9 U.S.C. § 9. Upon confirming the award, the Court must enter judgment on the award. *Id.* § 13.

Condition precedent to a court's entry of judgment is that "the parties in their agreement [must] have agreed that a judgment of the Court shall be entered upon the award made pursuant to the arbitration." *Id.* § 9. An agreement obviously satisfies this requirement when it explicitly articulates the parties' intention to have a court enter judgment on the award. *See, e.g.*, *Greenwich Ins. Co. v. Goff Grp.*, 159 F. App'x 409, 411-12 (3d Cir. 2005).

However, explicit words concerning entry of judgment are not required. Decisions of this district over the past two decades have uniformly held that an agreement for "final and binding" arbitration is sufficient to articulate the parties' intention to have a court enter judgment on the award. *See Robinson v. PNC Bank*, Civ. No. 13-7818, 2017 WL 2399082, at *2 (D.N.J. June 2, 2017); *Ne. Reg'l Council of Carpenters v. KRS Constr. Grp.*, Civ. No. 15-47, 2015 WL 4773367,

at *9-10 (D.N.J. Aug. 13, 2015); *N.J. Bldg. Laborers' Statewide Benefit Funds v. Newark Bd. of Educ.*, Civ. No. 12-7665, 2013 WL 5180433, at *3 (D.N.J. Sept. 13, 2013); *United States v. Local 69, HERE Int'l Union*, Civ. No. 02-1733, 2006 WL 2591085, at *3 (D.N.J. Sept. 8, 2006); *Teamsters-Empl. Local 945 Pension Fund v. Acme Sanitation Corp.*, 963 F. Supp. 340, 346-47 (D.N.J. 1997).

The Third Circuit has not addressed this issue, but other circuits have: the weight of the authority holds that parties' can demonstrate their intent to convert an award into a judgment without explicit contractual language to that effect. *See Ace/Cleardefense, Inc. v. Clear Defense, Inc.*, 47 F. App'x 582, 582 (D.C. Cir. 2002); *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 652 n.1 (5th Cir. 2000); *Daihatsu Motor Co. v. Terrain Vehs., Inc.*, 13 F.3d 196, 199-203 (7th Cir. 1993); *Booth v. Hume Pub'g, Inc.*, 902 F.2d 925, 929-30 (11th Cir. 1990); *Kallen v. Dist. 1199, Nat'l Union of Hosp. & Health Care Empls.*, 574 F.2d 723, 726 (2d Cir. 1978). *Contra PVI, Inc. v. Ratiopharm GmbH*, 135 F.3d 1252, 1253-54 (8th Cir. 1998).

In this case, the Court has authority under FAA § 9 to enter judgment on the award. The CBA states that any arbitration between the parties will be "final and binding." (CBA, art. VII, § 7(B).) This language indicates the assent of both[13] parties to judicial entry of judgment on the award. *Robinson*, 2017 WL 2399082 at *2; *Ne. Reg'l Council of Carpenters*, 2015 WL 4773367 at *9-10; *N.J. Bldg. Laborers' Statewide Benefit Funds*, 2013 WL 5180433 at *3; *Local 69, HERE Int'l Union*, 2006 WL 2591085 at *3; *Teamsters-Empl. Local 945 Pension Fund*, 963 F. Supp. at 346-47.

---

[13]  Although not dispositive, the Court notes that EMRE and ILEU litigated the confirmation of an unrelated arbitration under the CBA last year, but EMRE never contested that the CBA manifested the parties' agreement to have a court enter judgment on the award. *See ILEU v. EMRE*, No. 17-CV-11858, 2018 WL 1003272, at *4-5 (D.N.J. Feb. 20, 2018).

**VII. CONCLUSION**

For the reasons set forth above, ILEU's Motion to Confirm Arbitration Award is **GRANTED**, ILEU's Motion to Dismiss Respondent's Answer and Counterclaim is **GRANTED IN PART AND DENIED IN PART**, EMRE's Motion to Dismiss Petitioner's First Amended Petition to Confirm Arbitration Award is **DENIED**, and EMRE's Cross-Motion to Vacate Arbitration Award is **DENIED**. Finally, **JUDGMENT ON THE *KLEIN AWARD* SHALL ISSUE IN FAVOR OF ILEU**.

**Dated:** July 29, 2019          */s/ Brian R. Martinotti*_____
                                         **HON. BRIAN R. MARTINOTTI**
                                         **UNITED STATES DISTRICT JUDGE**